**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 15, 2006
Decided March 22, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-1755

| | |
|---|---|
| FIKRI REDZEB MYUMYUN and ANURSEN ISMAIL MUSTAFA, *Petitioners*, | Petition for Review of an Order of the Board of Immigration Appeals |
| *v.* | |
| ALBERTO R. GONZALES, Attorney General of the United States, *Respondent.* | Nos. A79-215-718 and A79-215-719 |

**ORDER**

Fikri Redzeb Myumyun and his wife, Anursen Ismail Mustafa, both natives and citizens of Bulgaria, petition for review of an order of the Board of Immigration Appeals affirming the Immigration Judge's denial of their claims for asylum, withholding of removal, and relief under the Convention Against Torture. Myumyun asserts that he was imprisoned, beaten, and threatened because of his Roma-Turkish background. For the same reason, he also claims that he suffered various forms of economic persecution. His wife is claiming derivative asylum status.

Myumyun asserts that individuals of Roma and Turkish descent in Bulgaria have long suffered discrimination. Because of the intolerance of his teachers and

fellow students, he says that he had to drop out of high school. He also says that his ethnicity prevented him from obtaining a government job, and when he tried to work as a musician, the government harassed him and told him to stop playing Turkish music.

In the 1980s, when Bulgaria was still under communist control, Myumyun was forced to change his Turkish name to a Bulgarian name. After the communists fell from power in 1990, Bulgarians of Turkish descent who had been forced to change their names were allowed to reclaim their original names. However, to do so they had to hire a lawyer, go to court, and formally request a name change. Myumyun says that he took these steps in 1996 but was upset about having to go through formal legal proceedings and pay a lawyer and he protested the policy in court. He says that officials in court then cursed him; he responded back in a manner that was interpreted as an insult to the court. He was told that he could not "insult the government employees with those kind of words" and was imprisoned for about a week. During this imprisonment, he says that he was beaten, and he presented a contemporaneous medical certificate stating that he had suffered contusions on his head, body, and extremities.

Myumyun also asserts that his ethnicity led to another detention in 2000 in a dispute with government officials stemming from his attempt to reclaim some land belonging to his family that the government had confiscated. When he went to a government office to protest the seizure of his family's property, he became agitated, argued with officials, refused to leave, and was ultimately arrested. This time he was imprisoned for two days. He says that he was again beaten, although less severely than the first time. He testified that two months after being released, government agents told him "he would be killed" if he continued to pursue his family's claim to this land. He decided to leave Bulgaria and came to the United States with his wife in November 2000.

The IJ did not make a finding as to Myumyun's credibility but determined that both the 1996 and 2000 incidents were too minor to rise to the level of persecution. The IJ also determined that even if Myumyun's detentions and beatings constituted persecution, such persecution was not "on account of " his ethnic background. Rather, the IJ found, Myumyun's detentions were caused by Myumyun's "instigation of fights with the authorities." The BIA adopted and affirmed the decision of the IJ.

We review the denial of an asylum claim for substantial evidence and will vacate the decision of the BIA only if the evidence compels a different conclusion. *Ssali v. Gonzales*, 424 F.3d 556, 561 (7th Cir. 2005).

Myumyun does not seriously challenge the IJ's finding that his detentions and beatings were due to his disorderly behavior rather than his ethnicity. He states in conclusory fashion that the IJ "misses the boat" with this finding, but he does not explain why. Conclusory or undeveloped arguments are waived. *See, e.g., United States v. Kumpf*, 438 F.3d 785, 791 (7th Cir. 2006). In any case, the evidence does not compel a conclusion different from that of the IJ. It is not clear from the record that Myumyun was detained and beaten "on account of" his ethnicity rather than his disruptive behavior toward government officials. In these circumstances, we must defer to the IJ's finding. *See Mitreva v. Gonzales*, 417 F.3d 761, 763–64 (7th Cir. 2005); *Marquez v. INS*, 105 F.3d 374, 381 (7th Cir. 1997).

In addition to the two detentions and beatings, Myumyun asserts generally that he was threatened with death if he continued to pursue his family's claim to their confiscated land. Here again, however, the evidence does not compel the conclusion that this threat was linked to ethnicity; Myumyun does not point to any evidence suggesting that his ethnic background motivated the threat.

Myumyun also argues that the IJ improperly disregarded his allegations of economic discrimination—namely, that he was denied government work. But the treatment that Myumyun describes is too vague to compel a conclusion of past economic persecution. Substantial economic deprivation can constitute persecution, *Koval v. Gonzales*, 418 F.3d 798, 800–01, 806 (7th Cir. 2005) (petitioner who earned master's degree in physics with distinction was forced to work as ticket checker, a "menial job" requiring "no education, training, or acuity"), but Myumyun has not provided any details to show that any economic deprivation he may have suffered was substantial. Unlike Koval, who was forced to work in a menial job substantially beneath her education and ability, Myumyun does not even identify the government job he wanted, much less specify his qualifications for it.

For the foregoing reasons, we DENY the petition for review.